UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENE FINANCE LP,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SACRAMENTO; JIM COOPER, solely in his official capacity as the SHERIFF OF SACRAMENTO COUNTY; MALCOLM & CISNEROS, a California law corporation; and Does 1–25,<br><br>    Defendants. | No.  2:23-cv-01124-DJC-CKD<br><br><u>ORDER DENYING MOTION TO DISMISS</u> |

    Plaintiff Selene Finance LP ("Selene") brings a section 1983 claim against the County of Sacramento, Jim Cooper in his official capacity as the Sheriff of Sacramento County ("the Sheriff's Office"), and Selene's former counsel, Malcolm & Cisneros ("the Firm"), as well as 25 Doe Defendants.  Selene alleges that Sacramento County and the Sheriff's Office (together, "County Defendants") violated Selene's cognizable property interests under the Fourteenth Amendment's Due Process Clause following an allegedly defective judicial foreclosure sale, and that the Firm committed legal malpractice during its representation of Selene throughout the judicial foreclosure

1

sale. The Firm now moves to dismiss all of Selene's claims against it as untimely under the applicable statute of limitations for legal malpractice claims. For the reasons set forth below, the Court DENIES Malcolm & Cisneros's Motion to Dismiss (ECF No. 11).

## BACKGROUND

### I. Factual Background

This case revolves around the judicial foreclosure sale of residential property located at 7507 Chula Vista Drive, in Citrus Heights, California ("the Property"). (See Not. of Removal Ex. 2 (ECF No. 1 at 34–67), ¶¶ 24–27 [hereinafter First Amended Complaint or FAC].) On January 11, 2018, the Sacramento Superior County Court entered a default judgment in favor of Selene that the Firm obtained ("the Underlying Action"). (*See* The Firm's Not. of Mot. and Rule 12(b)(6) Mot. to Dismiss (ECF No. 11) 6–7 [hereinafter Motion or MTD].)

According to the Parties, "Plaintiff was permitted to instruct the Sheriff to conduct a Sheriff's auction of the [P]roperty." (MTD 7 (citing FAC ¶ 19).) According to the Order, "Plaintiff may become a purchaser at the Sheriff's sale of the Property, and may credit bid up to the full amount of the indebtedness at the sale, including the entire amount awarded by this Judgment plus post-judgment interest, fees, charges, advances, and costs incurred in preserving the Property and effectuating the sale." (FAC Ex. A (ECF No. 1 at 54–60), at 4 (providing a copy of the 1/11/2918 Order).) Following the judicial foreclosure sale, the Sheriff's Office was authorized to execute and deliver a deed of sale to the purchaser, record a duplicate of the deed of sale, and transfer documents to Sacramento County or the city, with the purchaser to become the exclusive owner of the Property upon delivery of the deed. (*See id.*)

Before this, around 2018, Selene retained the Firm to represent Selene "with regard to the judicial foreclosure sale of the [Property]." (FAC ¶ 22; MTD 7.) The foreclosure sale of the Property was scheduled for November 20, 2018. (*See* MTD 7; FAC Ex. B (ECF No. 1 at 61–62) (providing a copy of the 11/19/2019 letter from the Firm to the Sheriff's Office revealing that the sale was scheduled for 11/20/2018).) The

day before, on November 19th, the Firm wrote a letter to the Sheriff's Office to provide bidding instructions (the "Instruction Letter"). (*See* FAC Ex. B.) The Instruction Letter stated: "Per the client, please set the opening bid amount at $205,800.00." (*Id.*) According to the First Amended Complaint, the Firm "responded to [the Sheriff's Office's concern regarding the high initial bid price] and re-confirmed, consistent with the November 19, 2019 letter instructions, that Selene was bidding $205,800.00, so if there were no higher bids, then the property will be sold to Selene at that amount." (FAC ¶ 21.)

Despite Selene's Instruction Letter and the Firm's confirmation of Plaintiff's intent to bid $205,800, County Defendants sold the Property for $0.01 on November 20, 2019 to First Group Investments ("FGI"). (*See* FAC ¶ 25; *also id.* ¶¶ 3, 11, 17, 25, 27.) In a conversation the next day, on November 21st, the Sheriff's Office informed the Firm that, although it did receive the Instruction Letter and the signed opening bid, "it is not codified that we have to follow such instructions, [and] [the] opening bid was not announced at the sale[.]" (*Id.* ¶ 26; *see* MTD 7.)

The Sheriff's deed from the foreclosure sale of the Property was recorded on January 29, 2020. (*See* MTD 7; FAC ¶ 27 (citing FAC Ex. C (ECF No. 1 at 63–67) (providing a copy of the Sheriff's Deed)).) As alleged in the First Amended Complaint, the recording of the deed after the sale of the Property for $0.01 deprived Selene of its property interests, creating damages. (*See* MTD 7-8 (quoting FAC ¶ 28).)

On May 6, 2020, Selene moved to set aside the foreclosure sale. (*See* MTD 8; Selene's Req. for Jud. Not. in Supp. of Selene's Opp'n Ex. 4 (ECF No. 14-1 at 61–73), at 6 [hereinafter Selene's Exhibit 4 or Selene's RJN Ex. 4] (providing a copy of the court docket in the Underlying Action)[1].) At the same time, Attorney Ian A. Rambarran and others with Klinedinst PC filed a notice of association of counsel with the Firm. (*See* Not. of Ass'n of Counsel (ECF No. 14-1 at 4–5) [hereinafter Selene's RJN Ex. 1].)

---

[1] As explained below, *see infra* Part II, the Court judicially noticed six exhibits from the Firm and incorporated another by reference, and judicially noticed all of Selene's requested exhibits.

3

1  The Sacramento County Superior Court denied Selene's motion to set aside the foreclosure sale on July 22, 2020. (*See* MTD 7 (citing The Firm's RJN Ex. D (ECF No. 11-1 at 67–72) (providing a copy of the minute order).) The court finally entered judgment in favor of FGI on October 20, 2020. (*See id.* (citing The Firm's RJN Ex. E (ECF No. 11-1 at 73–82) (providing a copy of the order).)

Selene filed a notice of appeal in the Underlying Action on August 20, 2020. (*See* Pl.'s Opp'n to the Firm's MTD (ECF No. 14) 8 [hereinafter Opposition or Opp'n]; Selene's RJN Ex. 4, at 1.) The decision was affirmed on November 9, 2022. (*See* The Firm's RJN Ex. B (ECF No. 11-1 at 45–55), at 1 (providing a copy of the 11/9/2022 appeals decision).) Following denial of Selene's petition for review by the California Supreme Court, a remittitur was issued and the judgment was finalized on March 3, 2023. (*See* Opp'n 8; Selene's RJN Ex. 4, at 1.)

## II. Procedural Background

On November 18, 2020, Selene filed a Verified Complaint for Damages that alleged the same facts and causes of actions as those brought in the First Amended Complaint against County Defendants, FGI, and 25 Doe Defendants. (*See* MTD 8. *Compare* The Firm's RJN Ex. G (ECF No. 11-1 at 86–114) (providing a copy of the Verified Complaint) *with* FAC.) The Firm was not named in the Verified Complaint. (*See* MTD 9 (citing The Firm's RJN Ex. G, ¶¶ 19–23).)

Selene filed the First Amended Complaint on April 24, 2023 that added the Firm as a party in three causes of action and named the successor to the Sheriff's Office, Jim Cooper. (*See* MTD 9; FAC.) County Defendants removed the matter to federal court on June 12, 2023. (*See* MTD 9; Not. of Removal (ECF No. 1) 3.) County Defendants filed answers jointly on June 26, 2023. (*See* ECF No. 4.) The Firm filed the instant Motion on July 14, 2023, which also sought judicial notice of eight exhibits. (*See* MTD; The Firm's RJN (ECF No. 11-1).) Selene filed its Opposition on July 28th and similarly sought judicial notice of four exhibits. (*See* Opp'n; Selene's RJN (ECF No. 14-1).) The Firm filed its Reply on August 11, 2023. (*See* The Firm's Reply (ECF

4

No. 20).)  The Court heard arguments on the Motion on September 14, 2023, where Attorney Millicent Meroney appeared for the Firm, and Attorneys Michael David Croddy and Marie C. Avery appeared for Selene.  At the September 14th hearing, the Court judicially noticed all of Selene's exhibits and judicially noticed all but two of the Firm's, with one being irrelevant and the other being incorporated by reference.  (*See* ECF No. 22.)  The matter is now fully briefed.

## MOTION TO DISMISS

### I.   Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.* (citing *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense."  *Id.* at 679.

////

## II.     Analysis

A federal court sitting in diversity jurisdiction applies the forum state's choice of law rules. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (citing *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008))). Because this Court sits in California, it must apply California's choice of law rules. *See id.*

California has two different analyses for selecting which law to apply in a case. *See Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 914–15 (2001). First, if there is choice-of-law provision that was negotiated at arm's-length, California courts apply the principles set forth in the Second Restatement on the Conflict of Laws section 187, "which reflect a strong policy favoring enforcement of such provisions[,]" especially where the provision was negotiated between sophisticated parties. *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 464–65 (1992); *see Washington Mutual Bank, FA*, 24 Cal. 4th at 915–16. Second, where a choice-of-law provision in a contract does not control, California courts will apply the so-called "governmental interest analysis" that asks the court to "'search to find the proper law to apply based upon the interests of the litigants and the involved states." *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 161 (1978) (quoting *Reich v. Purcell*, 67 Cal. 2d 551, 553 (1967)); *see Washington Mutual Bank, FA*, 24 Cal. 4th at 919–21.

Here, *Nedlloyd* supplies the relevant standard because of the presence of the choice-of-law provision in Selene's Legal Services Agreement with the Firm that states that the "Agreement shall be deemed to be made in accordance with, and in all respects shall be interpreted, construed, and governed by, the laws of the State of New York." (The Firm's RJN Ex. H (ECF No. 11-1 at 115–44), at 19.) Under the Restatement's approach to choice-of-law provisions as announced by California courts, there are three steps. *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 465–66. First, the court must determine whether the chosen state has a substantial relationship to the parties or their transaction, or whether there is any other reasonable basis for the

parties' choice of law. *See Bridge Fund Capital Corp.*, 622 F.3d at 1002 (quoting *Nedlloyd Lines B.V.*, 3 Cal. 4th 459). If either of these tests is met, then the court must determine whether the chosen state's law is contrary to a fundamental policy of California. *See id.* If the court finds that such a conflict exists, then the Court must determine "whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Id.* (citing *Nedlloyd Lines B.V.*, 3 Cal. 4th 459 (quoting *Restatement (Second) of Conflict of Laws* § 187(2) (1971))). If, after conducting this analysis, California possesses the materially greater interest, then California law must apply despite the choice-of-law provision. *See id.* at 1003.

For the first requirement regarding the reasonableness of the parties' choice-of-law selection, the Court finds that, as multistate entities licensed to do business in multiple states, including New York, the Firm and Selene could reasonably choose New York as a neutral, foreign state that has a well-known and developed body of commercial law. *See Restatement (Second) of Conflict of Laws* § 187 comment f (1971). That neither Selene nor the Firm are domiciled or reside in New York and that the contract was not substantially performed in New York are irrelevant. (*See* Reply 7.)

The next question for the Court is whether the chosen state's law is contrary to a fundamental policy of California. *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 466. Courts generally look to the Constitution, laws, and judicial decisions of that state, as well as the applicable principles of the common law, to determine the public policy of the state. *See First Intercont'l Bank v. Ahn*, 798 F.3d 1149, 1156 (9th Cir. 2015) (quoting *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 357 (1931)). Courts will also consider the underlying policies of the rules to see if there is a true conflict. *See, e.g.*, *Gen. Signal Corp. v. MCI Telecmmc'ns Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995) (finding no conflict between New York's statute that required clear and convincing evidence for fraud claims, and California's statute, that only required a preponderance of evidence); *ABF Cap. Corp., a Delaware Corp. v. Osley*, 414 F.3d 1061, 1066 (9th Cir. 2005) (finding that there was no true conflict when applying New York's longer statute

of limitations that had no exception, rather than California's shorter statute of limitations with exceptions, because applying New York law would make the claims untimely and thus protect the California defendant from a stale claim).

Here, the relevant fundamental policies of New York and California are reflected in the specific and particularized statutes that both have created regarding legal malpractice claims. *See, e.g.*, *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1132 (N.D. Cal. 2012) (citing *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 756 (1998)). These statutes potentially conflict to the extent one permits liability and the other does not, as California's statute of limitations is one year, but New York's is three (ignoring exceptions for both). *See ABF Capital Corp., a Delaware Corp.*, 414 F.3d at 1066 (quoting *Nedlloyd Lines B.V.*, 3 Cal. 4th 459). (*See also* Opp'n 13–14 (providing the potentially relevant statutes of limitations of New York and California).) At oral argument, counsel for the Firm, Attorney Millicent Meroney, conceded that the claims would be timely under New York's statute of limitations but time-barred under California's. That would suggest that California's statute of limitations should apply, but the *Nedlloyd* analysis focuses on actual conflicts, thus requiring further analysis into how the statutes would apply in practice. *General Signal Corp.*, 66 F.3d at 1506 (citing *Sarlot-Kantarjian v. First Pennsylvania Mortg. Tr.*, 599 F.2d 915, 918 (9th Cir. 1979); *Gamer v. duPont Forgan, Inc.*, 65 Cal. App. 3d 280, 289 (1976)).

Here, Selene's claims are timely under both California and New York law, thus presenting a case where there is no actual conflict. California's statute of limitations for legal malpractice (and other professional negligence claims) contains an exception that will toll the one-year limitations period so long as the attorney that negligently represented the client continues to represent the client regarding the same specific subject matter that gave rise to the potential malpractice claim, the so-called continuous representation exception. *See* Cal. Civ. Proc. Code § 340.6(a)(2) (West 2020). Selene argues that it falls within the exception. (*See* Opp'n 22.)

8

The continuous representation exception to toll California's statute of limitations for legal malpractice claims applies even if the client is aware of the attorney's negligence. *See, e.g.*, *Gonzalez v. Kalu*, 140 Cal. App. 4th 21, 28 (2006) (citations omitted). Moreover, California courts have settled on an objective standard from the client's perspective to determine whether the client knew or should have known that the representation has ended. *See, e.g.*, *id.* at 30 (framing the question as "when the client actually has or reasonably should have no expectation that the attorney will provide further legal services[ ]"); *Hensley v. Caietti*, 13 Cal. App. 4th 1165, 1170 (1993). Although California courts have disputed which factors are relevant to making this determination, *see Gonzalez*, 140 Cal. App. 4th at 31 (rejecting dicta in two cases suggesting that the standard looked at whether there was an ongoing mutual relationship and activities in furtherance of the relationship as in New York), all agree that the client's perspective controls, and that this is a factual issue, *see, e.g.*, *id.* at 32–33; *O'Neill v. Tichy*, 19 Cal. App. 4th 114, 120–21 (1993). Therefore, California courts will generally find that the statute is tolled for purposes of a motion to dismiss because, "'so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative,' and the statute of limitations is tolled." *O'Neill*, 19 Cal. App. 4th at 121 (quoting *Gurkewitz v. Haberman*, 137 Cal. App. 3d 328, 333 (1982)).

Here, there is evidence that the Firm continued to represent Selene throughout the appeal of the Underlying Action, based on evidence that the Court judicially noticed. Selene first points to the notice of association (as opposed to a substitution), indicating that the Firm was associating with Klinedinst PC, Selene's current counsel, in the Underlying Action starting May 6, 2020. (*See* Selene's RJN Ex. 1 (ECF No. 14-1 at 4–5).) Selene then points to the Firm's inclusion on the certificate of service on the appellate brief for the Underlying Action, which lists the Firm as "Attorneys for SELENE FINANCE" under the section showing which other interested parties were served true copies of the brief. (*See* Selene's RJN Ex. 3 (ECF No. 14-1 at 11–60), at 48–49.) The

brief was filed on June 17, 2021. (*See id.* at 50.) Finally, Selene points to the docket in the Underlying Action, which shows that the matter was not closed and finalized until March 3, 2023, after the remittitur was issued. (*See* Selene's RJN Ex. 4 (ECF No. 14-1 at 61–73), at 1.) That is more than enough factual material to support Selene's allegation in the First Amended Complaint that the Firm was hired and continues to represent Selene "with regard to the judicial foreclosure sale of the [Property,]" and that to "date the Firm has remained counsel for Selene." (FAC ¶ 22, 24.) Therefore, under California's statute of limitations, Selene's claims are timely, at least for purposes of this Motion.

Because Selene's claims are timely when applying California's statute of limitations under the continuous representation exception and when applying New York's statute of limitations there is no actual conflict between the two statutes of limitations. Because there is no actual conflict, then, the choice-of-law provision applied to the statute of limitations question at issue in this Motion is enforceable. *See ABF Capital Corp., a Delaware Corp.*, 414 F.3d at 1066. Because Selene's claims are timely under either statute at this stage, the Firm's Motion must be denied.

## CONCLUSION

For the reasons set forth above, the Court DENIES Malcolm & Cisneros's Motion to Dismiss (ECF No. 11). Selene Finance LP is GRANTED leave to amend if it chooses.

IT IS SO ORDERED.

Dated: __October 6, 2023__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – Selene.23cv1124.MTD