UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELENE FINANCE, LP<br><br>    Plaintiff,<br><br>  v.<br><br>MALCOLM & CISNEROS,<br><br>    Defendants. | No. 2:23-cv-01124-DJC-CKD<br><br><br><br>ORDER |

  This case involves Defendant law firm's representation of Plaintiff in a judicial foreclosure sale. Plaintiff brought claims against Defendant because the property in question sold for $0.01 in the foreclosure sale, despite Plaintiff's attempt to place a bid. Plaintiff claims Defendant engaged in professional negligence, breach of contract, and breach of their fiduciary duty. Defendant now moves for summary judgment, arguing that Plaintiff's professional negligence claim is untimely, and that Plaintiff's expert is not qualified to support their claims. (ECF No. 67.)

  For the reasons stated below, Defendant's Motion is denied.

## BACKGROUND

### I. Plaintiff's Allegations

  The underlying action involved the judicial foreclosure sale of residential property located at 7507 Chula Vista Drive, in Citrus Heights, California. (First

1

Amended Complaint ("FAC") (ECF No.1, Ex. 2) ¶ 1.) As alleged by Plaintiff, the property was sold on November 20, 2019, in a judicial foreclosure sale. (*Id*. ¶ 25.) During the judicial foreclosure sale, the property was sold to a third party for $0.01. (*Id*.) Plaintiff intended to submit a credit bid for the property in the amount of $205,800. (*Id*. ¶ 20.) Plaintiff alleges the property was sold for $0.01 because Defendant failed to properly submit bidding instructions to the Sacramento County Sheriff's Office. (*Id*. ¶ 78.) According to Plaintiff, the bidding instructions submitted by Defendant lacked the specificity needed for the Sheriff to understand Plaintiff was making a credit bid, not requesting a minimum bid. (*Id*. ¶ 24.) Plaintiff alleges this confusion was caused by Defendant's negligence (*id*.), and that this negligence caused the property to be sold for $0.01. (FAC ¶ 80.)

## II. Undisputed Facts

Relevant to this Order, the judicial foreclosure sale at issue occurred on November 20, 2019. (Reply to Separate Statement of Undisputed Facts ("Reply to SSUF") (ECF No. 72-1) ¶ 8.) On May 6, 2020, Selene filed a motion to set aside the sale. (*Id*. ¶ 13.) Also on May 6, 2020, Klinedinst Firm filed a notice of association of counsel in the underlying action. (*Id*. ¶ 12.) The motion to set aside was denied on or about July 16, 2020. (*Id*. ¶ 14.) On August 20, 2020, Selene filed a notice of appeal challenging the denial of the motion to set aside, which was unsuccessful. (*Id*. ¶ 15.) Following the denial of Selene's petition for review by the California Supreme Court, judgment was finalized on March 3, 2023. (*Id*. ¶ 42.)

## III. Procedural History

Plaintiff filed a verified complaint against the County of Sacramento in relation to the foreclosure sale of the property on November 18, 2020, in Sacramento Superior Court. (*See* ECF No. 1, Ex. 1.) Selene filed the FAC on April 23, 2023, which added the firm as a defendant in three causes of action: breach of contract, professional negligence, and breach of fiduciary duty. (FAC.) County Defendants removed the matter to federal court on June 12, 2023. (Not. of Removal (ECF No. 1).) County

1 Defendants were dismissed from the action on July 9, 2024. (ECF No. 52.) Defendant
2 Malcolm & Cisneros filed the instant Motion for Summary Judgment on May 23, 2025.
3 (ECF No. 67), and briefing is complete. (Mot. (ECF No. 67-1); Opp'n (ECF No. 72-1);
4 Reply (ECF No. 73).) On July 10, 2025, the Court held oral argument on the Motion.
5 (ECF No. 78.) Shawn Krogh and Ryan Fillmore appeared for Plaintiff, with John
6 Sullivan appearing for Defendant. (*Id*.) The matter was taken under submission. (*Id*.)

## EVIDENTARY OBJECTIONS

In ruling on summary judgment, the Court must only consider admissible evidence and resolve evidentiary objections that are material to its ruling. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2010); *Norse v. City of Santa Cruz*, 639 F.3d 966, 973 (9th Cir. 2010). However, the Court need not consider objections made on the ground that evidence is irrelevant, speculative, argumentative, or constitutes an improper legal conclusion as these are "duplicative of the summary judgment standard itself . . . ." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019). Additionally, at the summary judgment stage, the Court is not concerned with whether the form of evidence's presentation is admissible but whether the content is admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Thus, evidence that is not presented in an admissible form, such as statements that constitute hearsay, may be considered provided the evidence could be provided in an admissible, non-hearsay form at trial. *Id.* at 1036–37; *see Pablo-Dejesus v. County of Multnomah*, No. 3:19-cv-01574, 2020 WL 8361919, at *4 (D. Or. Dec. 29, 2020).

Defendant's first objection is to Amanda Harvey's declaration filed in support of Plaintiff's Opposition. (ECF No. 76 at 1; *see* ECF No. 72-3.) Defendant objects that the declaration was provided beyond the discovery timeline, and that the declaration itself is not based on personal knowledge and the facts asserted are only supported by hearsay. (ECF No. 76.)

A delay or late disclosure "may qualify as harmless as provided by Rule 37(c)(1) if it does not deprive the opposing party of the opportunity for discovery of what a

1  witness or witnesses may say during trial testimony, or further discovery based on
2  information that comes to light during witness depositions." *Padilla v. Beard*, No.
3  2:14-cv-01118-KJM-CKD, 2017 WL 1354565, at *3 (ED Cal. Apr. 12, 2017).  When
4  considering if a disclosure is harmless, courts consider whether the disclosure would
5  require the court to amend the scheduling order to accommodate the disclosure.
6  *Hoffman v. Constr. Protective Servs.*, Inc., 541 F.3d 1175, 1180 (9th Cir. 2008).  Ms.
7  Harvey is a Corporate Appearance Representative for Selene Finance.  (ECF No. 72-3
8  ¶ 2.)  She was deposed in this capacity on January 7, 2025, in relation to this case.
9  (*See* ECF No. 72-5, Ex. 552).  Defendant was not deprived of the opportunity to
10 discover what Ms. Harvey may say in her trial testimony because she was both Selene's
11 corporate representative and was deposed in that capacity.  The Court thus concludes
12 that the late disclosure of Ms. Harvey's declaration is harmless.
13      As to the hearsay objection, in making her declaration, Ms. Harvey asserts that
14 she relied on both her personal knowledge and a review of Selene's business records.
15 (ECF No. 72-3 ¶¶ 1, 3.)  This review cures any personal knowledge and hearsay
16 objections to her declaration in the context of the summary judgment motion.  The
17 objection is overruled.
18      Defendant's second objection to Exhibit 653 concerns evidence that is not
19 relevant for the Court to consider in ruling on Defendant's Motion.  (ECF No. 76 at 6.)
20 This evidence has not been considered by the Court in reaching the conclusions
21 below, and the Court need not rule on these objections.  *See Holt*, 370 F. Supp. 3d at
22 1164.

### LEGAL STANDARD

24      Summary judgment may be granted when the evidence shows that there is no
25 genuine issue as to any material fact and the moving party is entitled to a judgment as
26 a matter of law.  Fed. R. Civ. P. 56(c).  The principal purpose of summary judgment is
27 to dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477
28 U.S. 317, 325 (1986).  Therefore, the "threshold inquiry" is whether there are any

factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If the moving party meets its initial burden, the burden then shifts to the opposing party, which must establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  To meet their burden, parties must either cite to materials in the record supporting their position or show that the materials cited do not establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).

For the opposing party to succeed and avoid summary judgment, they "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  Rather, the opposing party must produce enough evidence such that the specific facts set forth by the nonmoving party, coupled with undisputed background or facts, are such that a reasonable jury might return a verdict in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, for the moving party to succeed, the court must conclude that no rational trier of fact could find for the opposing party. *Matsushita*, 475 U.S. at 587.  However, so as not to usurp the role of the jury, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and so the court draws all reasonable inferences and views all evidence in the light most favorable to the opposing party. *Liberty Lobby*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587–88.

////

5

**DISCUSSION**

**I. Plaintiff's Professional Negligence Claim under New York and California Law**

Defendant disputes the timeliness of Plaintiff's professional negligence claim. (Mot. at 14.) Defendant's alleged negligence took place during the sale of the property in November 2019, and the underlying action was filed on April 23, 2023. (FAC at 20.) Defendant contends that California law applies to the professional negligence claim, and that this claim is untimely under California law, which supplies a one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340.6(a). Plaintiff contends that New York law applies under the Legal Services Agreement, and that the claim is timely under New York's three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(6). The Court must thus determine which state's law applies to Plaintiff's professional negligence claim.

**A. Choice of Law**

Plaintiff Selene Finance is a Delaware limited partnership whose principal place of business is Texas. (Reply to SSUF ¶ 1.) Defendant Malcolm & Cisneros is a law corporation incorporated in California with a principal place of business in Irvine, California. (*Id*. ¶ 1.) Both parties entered into a Legal Services Agreement on March 31, 2016. (*Id*. ¶ 5; Legal Services Agreement (ECF No. 67-3, Ex. 10) at 1.) The Legal Services Agreement contains a clause that states "[t]his Agreement shall be deemed to be made in accordance with, and in all respects shall be interpreted, construed and governed by the laws of the State of New York." (Legal Services Agreement at 19.)

A federal court applies the forum state's choice of law rules. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). Where there exists a contractual choice of law and the claim falls within the scope of that agreement, California utilizes a three-step choice of law analysis. *See Nedlloyd Lines B.V. v. Superior Ct.* (*Nedlloyd*), 3 Cal. 4th 459, 466 (1992). The first step of the *Nedlloyd* analysis is to determine whether the chosen state has a substantial relationship to the parties or transaction, or if there is any other reasonable basis for

the choice of the law. *Id*. If neither requirement is satisfied, the inquiry ends and the provision is not enforceable. *Id*. Second, if there is a substantial relationship or reasonable basis, then the court must decide whether the chosen state's law is contrary to a fundamental policy of California. *Id*. The party seeking to invalidate the choice of law provision must demonstrate what fundamental policy of California is contravened by the chosen state's law. *See id*. at 468. If the chosen state's law is not contrary to a fundamental policy of California, then the choice of law provision is enforceable. *Id*. If the chosen state's law is contrary to a fundamental policy, then the court must determine whether California has a materially greater interest than the chosen state in the determination of the issue. *Id*. at 466. The party seeking to invalidate the choice of law provision must show that the chosen state's law contravenes a fundamental policy of California. *Id*. at 468.

As Plaintiff's professional negligence claim concerns the propriety of Defendant's actions while acting under the agreement, the claim falls within the scope of the Legal Services Agreement, thus the Court applies the *Nedlloyd* analysis.

### 1. Substantial Relationship or Reasonable Basis

First, the Court must decide whether the chosen state has a substantial relationship to the parties or their transaction, or whether there is any other reasonable basis for the parties' choice of law. *Nedlloyd*, 3 Cal. 4th at 466. Here, Selene Finance is incorporated in Delaware and is registered to do business in Texas, New York, and California. (Reply to SSUF ¶ 1.) As a nationwide company, Selene has a reason to choose New York state law to govern its contracts. This choice would ensure uniformity in interpreting its contracts. Thus, Plaintiff has a reasonable basis for selecting New York state law, which satisfies the first step of the *Nedlloyd* analysis. *See Cayanan v. Citi Holdings, Inc*., 928 F. Supp. 2d 1182, 1195 (S.D. Cal. 2013) (citing *1- 800-Got Junk? LLC v. Superior Ct*., 189 Cal. App. 4th 500 (2010)).

////

////

### 2. Contrary to Fundamental Policy – Actual Conflict

The second step of the *Nedlloyd* analysis is to determine whether the chosen state's law is contrary to a fundamental policy of California. *Nedlloyd*, 3 Cal. 4th at 466. If the foreign state's law is not contrary to a fundamental policy of California, then the choice of law provision is enforced. *Id*. If the chosen state's law is contrary to a fundamental policy of California, then the court must determine whether California has a "'materially greater interest than the chosen state in the determination of the particular issue . . . .'" *Id*. (quoting Restatement Second of Conflict of Laws § 187, subd. 2).

For the chosen state's law to be contrary to a fundamental policy of California, there must be an actual conflict between the two states' laws. *See Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995). The fact that the two states' laws differ does not necessarily signify that the application of foreign state law would contravene California public policy. *Id*. (citing *Sarlot-Kantarjian v. First Pa. Mortg. Tr.*, 599 F.2d 915, 918 (9th Cir. 1979); *Gamer v. duPont Glore Forgan, Inc.*, 65 Cal. App. 3d 280 (1976)). Here, for New York and California law to be in conflict on the issue of timeliness, the professional negligence claim would have to be timely under one state's law and untimely under the other state's law. *See id*. To move to the third step of *Nedlloyd*, New York's statute of limitations must <u>also</u> be contrary to a fundamental policy of California. *Nedlloyd*, 3 Cal.4th at 462.

#### i. Continuous Representation

The continuous representation exception tolls the statute of limitations for professional negligence claims in California. *See* Cal. Civ. Proc. Code § 340.6(a)(2). If the exception is satisfied, then Plaintiff's professional negligence claim is timely under California law. Because the alleged negligence took place in 2019, and the claim was filed in 2023, the professional negligence claim would be untimely if the exception is not met. (*See* FAC.)

The test for whether an attorney continued to represent a client on the same

specific subject matter is an objective one. *Lockton v. O'Rourke* 184 Cal. App 4th 1051, 1063 (2010). An attorney's representation is generally not completed until "the agreed tasks or events have occurred, the client consents to termination or a court grants an application by counsel for withdrawal." *Worthington v. Rusconi*, 29 Cal. App. 4th 1488, 1497 (1994) (internal citation omitted). The continuity of representation depends "not on the client's subjective beliefs, but rather on evidence of an ongoing mutual relationship and of activities in furtherance of the relationship." *Id*. at 1498. California courts have held "so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative" for the purposes of the continuous representation exception. *Gurkewitz v. Haberman*, 137 Cal. App. 3d 328, 333 (1982).

Failing to formally withdraw as counsel is not sufficient on its own to satisfy the continuous representation exception. *Rubinstein v. Barnes*, 195 Cal. App. 3d 276, 283 (1987). Similarly, a substitution of counsel alone is not conclusive of terminating the representation. *Nielson v. Beck*, 157 Cal. App. 4th 1041, 1052 (2007). A client's awareness of the alleged negligence and hiring a malpractice attorney also does not necessarily terminate the representation for purposes of the exception. *See O'Neill v. Tichy*, 19 Cal. App. 4th 114, 120 (1993).

There is a genuine dispute of fact as to whether the continuous representation exception is met. In his deposition, Charles Nunley, who works for Malcolm & Cisneros, testified that he began working on the underlying matter in November 2019. (Nunley Dep. (ECF No. 72-5, Ex. 551) 62:22–25.) On April 27, 2020, Ian Rambarran, who works for Klinedinst PC, the firm that filed the motion to set aside the sale for Plaintiff, called Mr. Nunley to discuss the motion to set aside before it was filed. (Rambarran Dep. (ECF No. 72-5, Ex. 555) 25:10–20.) Mr. Rambarran testified that he believed Mr. Nunley was involved in the decision to file the motion to set aside. (*Id*. at 26:2–5.) Mr. Rambarran stated that one of the declarations in support of the motion to set aside relied on facts supplied by Mr. Nunley. (*Id*. at 32:7–11.) Mr.

Rambarran also recalled Mr. Nunley "editing something" related to the motion to set aside. (*Id.* at 31:23–32:5.) On May 6, 2020, Klinedinst filed an association of counsel and the motion to set aside the sale in Sacramento Superior Court. (Reply to SSUF ¶¶ 12, 16.) Mr. Nunley attended the motion hearing, though he did not speak. (Rambarran Dep. at 60:19-24.)

On August 20, 2020, a notice of appeal for the denial of the motion to set aside was filed. (Reply to SSUF ¶ 15.) Mr. Nunley testified that he had reviewed the notice of appeal. (Nunley Dep. at 85:10.) Mr. Rambarran similarly recalled Mr. Nunley reviewing the opening brief for the appeal. (Rambarran Dep. at 68:8-10.) Mr. Nunley stated that he consulted on "everything in the appeal", including the reply brief. (Nunley Dep. at 85:5-23.) Mr. Nunley indicated he provided some caselaw to Mr. Rambarran to support their brief for the appeal (*id.* at 94:2-4), which is supported by an email from October 31, 2020, that Mr. Nunley testified about during his deposition. (Nunley Dep. at 103:25-104:25.)

On June 17, 2021, Selene's opening brief was filed. (ECF 72-5, Ex. 426 at 205). Mr. Nunley was listed on the certificate of service for that brief as an attorney for Selene. (*Id.* at 253). On November 17, 2022, Mr. Rambarran sent the opinion from the Court of Appeals in this case to Mr. Nunley. (Rambarran Dep. at 73:13-20.) A remittitur was issued on March 3, 2023, which formally ended the appeal on the motion to set aside the sale. (Reply to SSUF ¶ 42.)

Viewing the facts in the light most favorable to the non-moving party, there is evidence that Mr. Nunley provided factual and legal input on the motion to set aside. The evidence also supports the contention that he provided input on the appeal for the motion. These facts create a genuine dispute over when Mr. Nunley's final involvement ended, and a reasonable jury could conclude that the continuous representation exception applies. *See Gurkewitz*, 137 Cal. App. 3d at 333.

This conclusion is consistent with *O'Neill v. Tichy*, in which the court found there was enough evidence for a triable issue regarding continuous representation even

though the plaintiff was aware of the malpractice and retained counsel to investigate the matter. *O'Neill*, 19 Cal. App. 4th at 120-21. Despite retaining counsel, plaintiff O'Neill continued to use Tichy to provide background information to the new lawyers tasked with handling the underlying matter. *Id.* at 118. Providing facts and case input, coupled with a dispute over Tichy's role and when their formal involvement ended, was sufficient for the court for find a triable issue on continuous representation. *Id.* at 121.

In their moving papers, Defendant relies on *Foxborough v. Van Atta*, 26 Cal. App. 4th 217 (1994), in asserting that continuous representation does not apply. (*See* Mot. at 20–21.) That decision is distinguishable in important ways. In *Foxborough*, defendant Van Atta was hired as an attorney to deal with the underlying sale of a property. *Foxborough*, 26 Cal. App. 4th at 223. For four years there was no contact between the two parties. *Id*. In 1985, Van Atta wrote two letters attempting to secure Foxborough's annexation rights. *Id*. Also in 1985, Foxborough hired another attorney to handle the litigation to secure the annexation rights. *Id*. From 1985 to 1987, there was again no contact between Foxborough and Van Atta. *Id.* at 223, 229. In 1987, Van Atta was retained as an expert witness by Foxborough's new lawyers, *id*. at 223, and his role had changed from a representative in the negotiations to an expert witness. *Id*. at 229. The court held that the prolonged period of no contact and the significant change in Van Atta's role and responsibilities demonstrated that he did not continue to represent Van Atta after August 1985. *Id*.

By contrast, here there is no indication that Mr. Nunley's role substantially changed during his work on behalf of Selene Finance. Rather, a reasonable jury could conclude that Mr. Nunley acted as an attorney during all relevant periods. This is distinguishable from the change in Van Atta's role from an attorney to an expert witness. The disputed facts indicate that Mr. Nunley had some role with regard to the motion and the appeal, such that there is a genuine dispute over when this representation ended. *Foxborough* is thus distinguishable.

11

Defendant further relies on the fact that Malcolm & Cisneros stopped billing Selene for work on August 31, 2020, and that the parties entered into a one-year tolling agreement on November 18, 2020, to support the lack of continuous representation. (ECF 67-5, Ex. 24 at 54; ECF 67-5, Ex. 22 at 14 and Ex. 23 at 16.) While certainly a relevant fact that a jury could consider, the existence of the tolling agreement is not conclusive of whether Defendant's representation was terminated. The test for continuous representation is objective and relies on all the actions by the Defendants regarding the underlying matter. *See Lockton*, 184 Cal. App 4th at 1063; *Worthington*, 29 Cal. App. 4th at 1497. California courts have determined that formally substituting counsel and hiring malpractice attorneys are not enough on their own to conclusively defeat the continuous representation exception. *See Nielson v. Beck*, 157 Cal. App. 4th 1041, 1052 (2007); *O'Neill*, 19 Cal. App. 4th at 120. For there to be no triable issue to exist as to whether there was continuous representation, the Defendant must show that the undisputed facts establish that Defendant did not provide any advice or services related to the underlying matter. *See Truong v. Glasser*, 181 Cal. App. 4th 102, 117 (2009). Here, the disputed facts do indicate Mr. Nunley worked on the motion to set aside and the subsequent appeal. Notably, Mr. Nunley's involvement included work on the appeal <u>after</u> the tolling agreement was signed. This is sufficient to establish a triable issue whether the continuous representation exception is met.

### ii. Contrary to a Fundamental Policy

Even if the claim is timely under New York law but not California law such that there is a conflict, the Defendants would still have to show that such a conflict is contrary to a fundamental policy of California. *Nedlloyd*, 3 Cal.4th at 466. In order to resolve which law applies to these issues at trial, the Court proceeds to determine whether a conflict would be contrary to California's fundamental public policy, and concludes it is not, and that New York law governs the statute of limitations for the claim of professional negligence.

12

California courts have held that there is no bright line rule for determining what constitutes a fundamental policy of California. *See Discover Bank v. Superior* Ct., 134 Cal. App. 4th 886, 893 (2005). However, other federal courts, when deciding whether a particular law constitutes a fundamental policy of California, look to California judicial decisions to determine whether a particular law or statute has historically been viewed as constituting a fundamental policy of the state. *See e.g.*, *Tri-Union Seafoods, LLC* v. *Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1168–70 (S.D. Cal. 2015) (examining the long history of the California Supreme Court recognizing the state's interest in protecting the unique relationship between the insured and insurance companies and concluding that New York's law that does not allow for liability for breach of good faith is contrary to a fundamental policy of California).

California courts have allowed contracting parties to both lengthen or shorten the applicable statute of limitations. *See Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532, 1547 (1995). Significantly, California courts have found that parties agreeing to a foreign state's longer statute of limitations does not violate the state's public policy. *See Hatfield v. Halifax PLC,* 564 F.3d 1177, 1183 (9th Cir. 2009*); Lehman Bros. Holdings, Inc. v. First Priority Fin., Inc.,* No. 12-cv-02500-JAM-KJN, 2013 WL 753495, at *3 (E.D. Cal. 2013). Courts have even found that the foreign state's statute of limitations is not contrary to fundamental policy when it is four years longer than California's statute. *See J.P. Morgan Chase Bank, N.A. v. Shea Mortg., Inc.*, No. 13-cv-09128-PSG-JCGX, 2014 WL 12696354, at *4 (C.D. Cal. 2014).[1]

The cases cited by Defendant do not apply the relevant *Nedlloyd* analysis and are thus inapposite. Defendant first relies on *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d

---

[1] Pre-*Nedlloyd*, one California court did find that a foreign state's statute of limitations that was 11 years longer than California's statute did not apply. *See Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982). However, the court did not address whether it was contrary to a fundamental policy of California because it was decided before *Nedlloyd*. *Id*. Instead, the court in *Ashland* was focused on whether the other state had a "substantial relationship" to the case. *Id*. Finding it did not, the court did not reach whether the longer statute of limitations violated California policy. *Id*. Here, of course, the Court has concluded that the parties had a reasonable basis to choose New York law, and the difference between the statutes of limitations is only at most two years.

1085 (9th Cir. 2021). (Mot. At 18.) In *Rustico,* rather than apply the *Nedlloyd* test that governs this case, the court applied the government interest approach because there was no contract with a choice of law provision. *Rustico*, 993 F.3d at 1091. In contrast to the *Nedlloyd* approach, the governmental interest approach used in *Rustico* looks at comparative impairment of the states' interests, not if the foreign state's law is contrary to a fundamental policy of California. *Id*. *Rustico* is thus not applicable to this case. Defendant also cites to *Deutsch v. Turner Corp*., which similarly did not address a choice of law provision in a contract. *See Deutsch*, 324 F.3d 692 (9th 2003).

Defendant has failed to meet their burden to show that New York's law is contrary to a fundamental policy of California. New York's statute of limitations is two years longer than California's statute of limitations for legal malpractice claims. *See* Cal. Civ. Proc. Code § 340.6(a); N.Y. C.P.L.R. § 214(6). As detailed above, California's statute also contains a tolling provision that allows for a longer statute in certain circumstances. Cal. Civ. Proc. Code § 340.6(a)(2). The cases cited above indicate that a two-year discrepancy between statutes of limitation – and possibly less where California's continuous representation exception applies – does not sufficiently establish that the foreign state's law is contrary to a fundamental policy of California.

Therefore, even if the claim is timely under New York law and not timely under California law, the choice of law provision is enforceable because New York law does not contravene a fundamental policy of California.[2]

---

[2] Defendant does not address whether New York substantive legal malpractice law is in conflict with California legal malpractice law. Historically, California courts have found that two states' laws are in conflict if one state allow for liability while the other state's law would not permit liability. *See Bernhard v. Harrah's Club*, 16 Cal. 3d 313 (1976). If the states' laws are identical then there is no conflict. *See Wash. Mutual Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 920 (2001). Under both California and New York law, to prove a claim of legal malpractice, the plaintiff must show breach of the attorney's duty of care, the breach was the proximate cause of the harm, and loss or damages from the negligence. *See Carlton v. Quint*, 77 Cal. App. 4th 690, 699 (2000); *Cummings v. Donovan* 36 A.D.3d 648, 648 (2007). This Court does not rule on whether the substantive law is in conflict, because the Defendant failed to raise that argument. *Nedlloyd* requires that the conflicts analysis be applied to each claim. *See Zinser v. Accufix Rsch. Inst.*, *Inc*., 253 F.2d 1180, 1188 (9th Cir. 2001). Since other conflicts of law were not raised, the Court does not decide choice of law for the other claims, and nothing in this Order or this footnote specifically should be construed as the Court taking a position on the matter. Parties can raise those issues if applicable in preparation for trial.

14

## II. Plaintiff's Use of Lawrence H. Jacobson as an Expert Witness.

Defendant contends that Plaintiff's expert witness is not qualified to give expert testimony in this matter. (Mot. at 24.) In the first amended complaint, Plaintiff alleges both a breach of contract claim and a professional negligence claim against Defendant. (FAC ¶ 23, 19.) Defendant contends Plaintiff's expert is not qualified to give expert testimony for either claim. (Mot. at 24.) The breach of contract claim does not require expert testimony. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). Furthermore, Plaintiff's expert is qualified to give expert testimony on the applicable duty of care.

### A. Breach of Contract Claim

Defendant contends that Plaintiff's breach of contract claim requires qualified expert testimony. As discussed below, the Court finds that Mr. Jacobson is qualified to give expert testimony in regard to the professional negligence claim. Regardless, expert testimony is not required for a breach of contract claim. *See Klamath Water Users Protective Ass'n*, 204 F.3d at 1210 ("Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."). As such, Plaintiffs may proceed on their breach of contract claims regardless of their ability to present qualified expert testimony.

With that said, Plaintiff cannot rely on new, previously unidentified provisions of the contract as a theory of liability. *See Fox v. Good Samaritan L.P.*, 801 F. Supp. 2d 883, 896 (2010). In opposing Defendant's Motion for Summary Judgment, Plaintiff identified a new provision of the Legal Services Agreement, article 2, section 2.2, that they allege Defendant breached. (Opp'n at 22.) This is not a section of the contract that was previously identified. (*See* FAC ¶ 72.) In an opposition to a Motion for Summary Judgment, Plaintiff cannot assert new or different grounds for liability beyond those enumerated in the pleading. *See Patmot Motor Werks, Inc. v. Gateway Marine, Inc.,* No. 96-cv-02703-TEH, 1997 WL 811770, at *5 (N.D. Cal. Dec. 18, 1997).

15

In *Patmont Motor Werks, Inc.,* the plaintiff asserted that the defendant had breached the contract by failing to properly behave himself. *Id.* In the complaint, the plaintiff did not raise that allegation but instead alleged that the defendant breached the contract by improperly using a mark in his email address. *Id.* The court held that the plaintiff could not rely on this new theory to survive the motion for summary judgment. *Id.* The same is true here. Plaintiff cannot rely on an alleged breach of article 2, paragraph 2.2 to survive the Motion for Summary Judgment. However, for the reasons stated above, Plaintiff's breach of contract claim, as alleged in the FAC, is still viable.

### B. Professional Negligence Claim

Defendant contends that Plaintiff's expert witness is not qualified to opine on the applicable standard of care for Plaintiff's professional negligence claim. (*See* Mot. at 24.) Defendant asserts that Plaintiff's expert, Lawrence Jacobson, does not have sufficient specialized knowledge on judicial foreclosure sales to be a valid expert witness in this case. (*See id*.) The Court finds, however, that testimony of an expert with knowledge of judicial foreclosure sales specifically is unnecessary for Plaintiff to state a claim for professional negligence. Based on the record before the Court, Mr. Jacobson is qualified to give expert testimony on the applicable standard of care.

Federal Rule of Evidence 702 requires that expert witnesses have scientific, technical, or other specialized knowledge that will help determine a fact at issue. *See* Fed. R. Evid. 702. Trial courts must decide whether an expert has sufficient specialized knowledge to assist jurors. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). In legal malpractice cases, expert testimony is required to establish applicable the standard of care. *See Vaxiion Therapeutics Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1165 (S.D. Cal. 2008) (citing *Lipscomb v. Krause*, 87 Cal. App. 3d 970, 975 (1978)).

When a lawyer holds himself out as a specialist in an area of law, then he his bound by the skill and diligence other specialists would exercise. *Wright v. Williams*,

47 Cal. App. 3d 802, 810 (1975). If a malpractice action is brought against such a specialist <u>and the claim is related to his expertise</u>, "then only a person knowledgeable in the specialty can define the applicable duty of care and opine whether it was met." *Id*. at 810–11. For example, if a lawyer holds himself out as a maritime law expert, and an action is brought alleging a reasonably prudent maritime specialist would have informed their client of certain repercussions, then an expert in maritime law is required to opine on the applicable standard of care. *See generally id*. Furthermore, if a malpractice claim alleges unethical behavior, then the expert witness must have some training in legal ethics to opine on the applicable standard of care. *See Vaxiion Therapeutics Inc.,* 593 F. Supp. 2d at 1163.

Mr. Jacobson has been an attorney in California for 57 years. (ECF No. 72-6, Ex. 651 at 3.) He has provided expert testimony in about 192 cases. (Jacobson Dep. (ECF No. 72-5, Ex. 558) 44:6–8.) Approximately a third of those cases have concerned legal malpractice issues. (*Id*. at 45:23–46:3.) Mr. Jacobson states he is familiar with the mechanics of judicial foreclosure sales but would not consider himself an expert in that field. (*Id.* at 72:20-73:3.) In his expert report, Mr. Jacobson opines that Defendant's services fell below the standard of care because they failed to educate themselves on judicial foreclosure procedures, failed to properly supervise a law clerk, and failed to do their due diligence in preparing and following through on the bidding instructions. (ECF No. 72-6, Ex. 651 at 5–6). Mr. Jacobson is qualified to give these opinions based on his legal training and experience. He is thus qualified to give expert testimony on the applicable standard of care for Plaintiff's professional negligence claim.

Plaintiff did not bring a malpractice action based on Defendant's failure to adhere to the standard of care specific to judicial foreclosure actions. (*See* FAC ¶ 76.) Rather, Plaintiff generally alleges Defendant failed to exercise reasonable care and skill in performing legal services for Selene. (*Id*.) Specifically, in their complaint, Plaintiff points to Defendant's failure to inform Plaintiff about the repercussions of the

underlying sale. (*Id*. ¶ 79.) This alleged malpractice includes conduct around the judicial foreclosure sale, but is not necessarily limited to the mechanics of the judicial foreclosure sale. The alleged negligence concerns Defendant's failure to educate themselves on judicial foreclosure procedures, failure to properly supervise a law clerk, and failure to do their due diligence in preparing and following through on the bidding instructions. (ECF No. 72-6, Ex. 651 at 5–6.) This alleged negligence is not tied to the mechanics of a judicial foreclosure, but instead is limited to general issues of negligence. This is distinguishable from the claim made in *Wright,* which required a specialist in maritime law to opine on the applicable duty of care. *See Wright,* 47 Cal. App. 3d at 810.

Since Mr. Jacobson is qualified to give expert testimony on the applicable standard of care, Plaintiff has presented evidence from which they can establish a claim for professional negligence. That said, nothing in this Order forecloses the possibility of future motions in limine to limit the scope of Mr. Jacobson's testimony. For the purposes of this Motion, however, is he qualified to provide expert testimony sufficient to support Plaintiff's claims.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (ECF No. 67) is DENIED.

IT IS SO ORDERED.

Dated: **August 18, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE